**E-FILED**
Monday, 09 November, 2009  10:25:13 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DERRICK S. SAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  07-3098 |
| | ) | |
| LISA MADIGAN, Attorney General | ) | |
| of the State of Illinois, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Derrick S. Sams' Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 4) (Petition).  In 2002, Sams was convicted following a jury trial in the Circuit Court of Livingston County, Illinois, of burglary and criminal damage to property.  At the time of the offense, Sams was on parole for a 1996 burglary conviction in the State of Tennessee.  Sams was sentenced in the Livingston County case to a twelve-year extended term of imprisonment for the burglary conviction and 364 days imprisonment for the criminal damage conviction, with the sentences to run concurrently to

1

each other and to any time he might be ordered to serve upon revocation of his parole in Tennessee.  Sams asks the Court to set aside his conviction based on an alleged due process violation arising from the fact that he was shackled during trial and alleged ineffective assistance of trial counsel for failing to adequately preserve the record as it related to the visible nature of the shackling.  For the reasons set forth below, the Petition is denied.

BACKGROUND

In November 2001, someone broke into a bar named Smith's Tap located in Flanagan, Illinois.  Money was taken from various game machines within the bar and the machines and the bar's back door were damaged.  At Sams' trial, Deputy Kenneth Palmer testified as follows.  Palmer was on routine patrol at approximately 4:22 a.m. on November 11, 2001, at which time a gray Mercury parked near the back door of Smith's Tap caught his attention.  All of the other cars in the area were covered with frost, but the Mercury was not.  Palmer approached the car and noted that the keys were in the ignition.  Palmer also saw the handle to the back door of Smith's Tap lying on the ground.  Palmer noticed that the back door was open and two-by-fours that had secured an inner door were on the floor.

Palmer backed away from the door and drew his weapon and

flashlight.  Shortly thereafter, Palmer saw a man look out the back door. Palmer shined his flashlight on the subject and told him to put his hands up. Instead, the man closed the door.  Palmer testified that he observed the man for a few seconds before the door was closed and that the man was illuminated by the flashlight and by a streetlight in the alley.  Palmer identified Sams as the man he saw at Smith's Tap.

At approximately 8:00 a.m., Palmer saw Sams driving the gray Mercury.  He and another deputy initiated a traffic stop and arrested Sams for driving with a suspended license.  Palmer testified that, when Sams exited the Mercury, Palmer immediately recognized him as the man who had been at the back door of Smith's Tap.

Sams raised an alibi defense.  Both Sams and his wife testified that Sams was at home sleeping at the time of the incident.  Sams also called a woman who had been delivering newspapers near Smith's Tap in the early morning hours of November 11, 2001.  The newspaper lady testified that she heard a voice and then saw a man running away from Smith's Tap.  She testified that she thought the man that she saw had longer legs and longer hair than Sams.  After deliberation, the jury convicted Sams on both counts.

On the day of trial, prior to bringing the prospective jurors into the

courtroom, the Circuit Court Judge ordered Sams' legs to remain shackled during the trial and that the shackles be fastened to the floor.  Answer (d/e 7), Attachment 1, p. 24-25.[1]  In doing so, the Judge considered Sams' prior criminal record for flight risk or danger.  The prosecutor represented that Sams' prior record consisted of "All burglaries."  Id., p. 24.  Defense counsel objected to the shackling, and the Judge made further inquiry.  Sams represented that he had served time for burglary and had been released in August 2000.  Id., p. 25.  The Judge overruled the defense objection, noting that "[t]he jury is not going to be able to see his feet."  Id.

During the trial, the newspaper lady testified immediately before Sams.  Prior to the newspaper lady's testimony, the Court took a short recess.  The following exchange then occurred outside the presence of the jury between the Court and defense counsel:

> THE COURT: . . . [w]ould you unhook the defendant from the floor.  Would it be correct, Mr. Ahlemeyer, that your next witness you will ask the defendant to stand and you plan on having the defendant then testify as well?  Or do you know?
>
> MR. AHLEMEYER:  I probably will.  So this will also serve to

---

[1]Respondent's Ex. A consists of 410 pages, and due to its length, it is filed as ten separate attachments to Respondent's Answer.  Because Ex. A does not contain continuous internal pagination, the Court will cite to it by the attachment number and page number assigned by this Court's electronic filing system.

facilitate that.

Answer, Attachment 3, p. 35.  The jury returned to the courtroom and the newspaper lady was called to testify.  During her testimony, the record reflects that defense counsel had Sams stand between two tables in the courtroom so that the witness could see him.  Id., p. 40.  After the newspaper lady testified, Sams took the stand in the presence of the jury and testified.

On the day of sentencing, March 6, 2002, Sams filed a pro se motion for a new trial, asserting in part ineffective assistance of counsel.  The Court denied the pro se motion in open court, finding that Sams was well-represented.  Sams was then sentenced to a twelve-year extended term of imprisonment for the burglary conviction and 364 days imprisonment for the criminal damage conviction.  On March 11, 2002, Sams filed a pro se motion to reconsider his sentence, raising, among other issues, the shackling. On April 17, 2002, the court held a hearing on Sams' motion, during which Sams argued that he was prejudiced when he "was told to get on the stand and jury members were looking at [his] shackles."  Answer, Attachment 5, p. 21.  The Court addressed the issue as follows:

    With respect to shackles, the record should reflect that the

5

> defendant was in custody at the time.  He has a significant
> criminal record.  He was dressed appropriately at jury trial.  He
> was seated at counsel table with his lawyer.  There was a shackle
> or presumably one of his hands was attached to the table so he
> couldn't leave.  We have had considerable history in Livingston
> County with difficulties in the courtroom.  And I found that to
> be necessary when someone was in custody after I take into
> account their criminal history.

Id., Attachment 5, p. 23.

Sams appealed his conviction and sentence.  Answer, Ex. B.  Sams
raised several arguments on appeal, including two relevant to the instant
matter.  Sams argued that he was deprived of the presumption of innocence
and a fair trial when the Court required him to wear shackles in front of the
jury.  Sams further asserted that trial counsel was ineffective in failing to
properly contest the shackling and failing to raise the use of shackles in a
post-trial motion.

The Appellate Court affirmed the judgment of the trial court by a two-
to-one vote.  Answer, Ex. E.  The majority recognized that a defendant
should only be shackled in front of a jury if evidence suggests he may try to
escape, he may pose a threat to the safety of the people in the courtroom, or
if shackling is necessary to maintain order during trial.  They noted that the
trial court expressed three reasons for shackling Sams: courtroom security,

the fact defendant was in custody, and defendant's criminal record.  The Appellate Court determined that, under the totality of the circumstances, the trial court did not abuse its discretion in ordering the shackling.  In doing so, the Court noted that the same Judge who ordered the shackling previously presided over a bond hearing, in November 2001, during which Sams conceded that his criminal record included a 1983 burglary, a 1983 jail escape, a 1996 burglary, a 1996 larceny from a building, and a 1996 aggravated burglary.  Id., p. 8.  The Court further noted that the record did not support Sams' assertion that the jurors saw his shackles when he was told to take the witness stand.  With respect to the ineffective assistance claim, the majority held that, even if counsel's objection to the use of shackles was inadequate, Sams failed to establish prejudice because the record indicated that jurors could not see the shackles, and precautions were taken to ensure that the jury would not see them.

Justice Appleton dissented, stating his belief that, by refusing to remove Sams' shackles, the trial court deprived Sams of a fair trial.  Answer, Ex. E., p. 23.  According to Justice Appleton, none of the three reasons advanced in support of the shackling carried any individual weight and, thus, cumulatively they remained insufficient to justify the restraint.

Sams filed a Petition for Leave to Appeal (PLA) with the Illinois Supreme Court, asserting that the trial court erred in requiring Sams to remain shackled during the trial, in failing to sua sponte tender a jury instruction concerning identification testimony, and in failing to examine the factual basis of Sams' post-trial claim of ineffective assistance of counsel. Answer, Ex. F.  The PLA was denied on October 6, 2004.  Answer, Ex. G. Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on May 31, 2005.  Answer, Ex. H.

On April 4, 2005, Sams filed a pro se state post-conviction petition, alleging that his due process rights were violated when he was shackled during trial and that trial counsel was ineffective in failing to adequately preserve the record as it related to the shackling.  Answer, Attachment 8, p. 35.  Sams argued that the jurors were aware of the shackles because they were not removed from the outside of his pant legs when he posed during the testimony of the newspaper lady and when he took the witness stand. Answer, Attachment 9, p. 3.  Sams asserts that he was unhooked from the floor, but that when he was posing during the testimony of the newspaper lady, he "realized that the shackles upon being re-attached to [his] leg had been placed on the outside of [his] khaki pants over the pant legs."  Id., p.

7 (emphasis in original).  Sams attached several affidavits from himself and spectators which averred that Sams was visibly shackled when he stood before the jury during the time the newspaper lady was testifying.  Id., p. 6-18.  Sams' affidavit and one other also aver that the shackles were on when Sams took the witness stand.  The trial court summarily dismissed Sams' post-conviction petition, finding that his claims were barred by the doctrine of waiver because all of the underlying facts were known to Sams at the time of trial and during direct appeal.

With the aid of appointed counsel, Sams appealed the dismissal to the Illinois Appellate Court, arguing that the trial court erred in summarily dismissing his post-conviction petition because it stated the gist of two meritorious claims, i.e. that Sams' due process rights were violated when the court forced Sams to remain visibly shackled before the jury and that trial counsel rendered ineffective assistance when he failed to properly preserve the record to reflect the fact that the jury was aware of the shackles.  Answer, Ex. I.[2]

---

[2]The Court notes that only the even numbered pages of Sams' post-conviction appellate brief have been submitted in Ex. I.  The pages that have been submitted support a finding that Sams raised these two issues on appeal, and Sams does not contest this.

The Appellate Court affirmed the summary dismissal in a unanimous opinion by the same panel that had considered Sams' direct appeal. Answer, Ex. L.  The Court restated its ruling on direct appeal that the record indicated that jurors could not see the shackles and precautions were taken to ensure that the jury would not see them.  The Court then determined that Sams could have raised the alleged ineffective assistance of trial counsel in failing to preserve the record to show that the shackles were visible to the jury on direct appeal, but failed to do so. Id., p. 6.  The Court concluded by noting its belief that Sams was attempting to take another shot at direct appeal with the benefit of hindsight, after ascertaining that the visibility of the shackles might have made a difference on direct appeal. Id., p. 7.

Sams, through counsel, filed a PLA, raising the same issues he had raised in the Appellate Court. Answer, Ex. M.  The PLA was denied on November 29, 2006. Answer, Ex. N.  Sams then timely filed the instant Petition.  At the time Sams filed the instant Petition, he was incarcerated at the Illinois Department of Corrections' Logan Correctional Center.  Sams was subsequently remanded to Tennessee.  Thus, the State moves to substitute Lisa Madigan, Attorney General of the State of Illinois, as Respondent, and the Court deems this substitution to be appropriate.  Thus,

Lisa Madigan is hereby substituted as Respondent pursuant to Rule 2(b) of the Rules Governing § 2254 Cases.[3]

## ANALYSIS

Sams raises the following grounds for habeas relief in his Petition:

1.    Sams' due process rights were violated when he was forced to wear shackles during his trial, and

2.    Trial counsel was ineffective in failing to preserve the record to reflect that Sams remained visibly shackled when he posed for a witness and when he took the witness stand.

Petition, at 5-6.

Before this Court can consider the merits of Sams' claims, the Court must determine whether either of the claims have been procedurally defaulted.   Sams must have given the Illinois courts a full and fair opportunity to address each claim through a complete round of Illinois appellate procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  To satisfy this requirement, Sams must have presented to the state courts both

---

[3]This Court has jurisdiction to hear a petition for a writ of habeas corpus pursuant to a state court judgment if the person seeking relief is in custody under the conviction or sentence under attack at the time his petition is filed.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); see Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  Because Sams was in custody on his Livingston County conviction at the time his Petition was filed, the Court has jurisdiction to consider Sams' claims.

the operative facts and the legal principles that control each claim.  <u>Mahaffey</u> <u>v. Schomig</u>, 294 F.3d 907, 915 (7th Cir. 2002).  In addition, a claim is deemed to be procedurally defaulted if the state court rejected the claim on independent and adequate state grounds.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991).

Respondent asserts that Sams' ineffective assistance claim, Claim 2, is procedurally defaulted because the Illinois Appellate Court deemed it forfeited on post-conviction appeal.  "When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed."  <u>Miranda v. Leibach</u>, 394 F.3d 984, 991 (7th Cir. 2005).  "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim."  <u>Id</u>. at 991-92.  In the instant case, Claim 2 was clearly resolved on an independent and adequate state law ground.

"A state ground is deemed 'independent' . . . 'only if the state court actually relied on a state rule sufficient to justify its decision.'"  <u>Miranda</u>, 394 F.3d at 992 (citation omitted).  The last state court decision on Claim

12

2 was the Illinois Appellate Court's July 28, 2006, Order.  <u>Answer</u>, Ex. L.

The Appellate Court expressly declined to reach the merits of Claim 2 on

procedural grounds, finding it to be forfeited.[4]  The Court noted the general

principle in Illinois that issues that could have been raised on direct appeal,

but were not, are deemed waived.  The Court further noted that the doctrine

of forfeiture should be relaxed: (1) if fundamental fairness so requires, (2) if

the forfeiture stems from the ineffectiveness of appellate counsel, or (3) if the

facts relating to the claim do not appear on the face of the original appellate

record.  <u>Id</u>., p. 4.  Applying this standard to Sams' case, the Court held as

follows:

> Defendant now claims his trial counsel was ineffective for failing to preserve the record to show that his shackles were visible to the jury.  Defendant could have raised this issue on direct appeal as he knew during trial that his shackles were visible and his trial counsel did not preserve the record to show such. . . .
>
> Waiver is appropriate in this case as defendant could have made this allegation on direct appeal but waited until ascertaining that the visibility issue may have made a difference on direct appeal.

<u>Id</u>., p. 6-7.

---

[4]As the Seventh Circuit has recognized, while "[t]rue waiver entails the intentional relinquishment of a known right," Illinois cases typically use the term in its broadest sense to signify forfeiture of a claim.  <u>Miranda</u>, 394 F.3d at 992 n.3.

"The adequacy of the state ground is a question of federal law; the ground is considered 'adequate' only if the state court applies the rule in a consistent and principled way."   <u>Miranda</u>, 394 F.3d at 992 (internal quotations and citations omitted).  In <u>Schaff v. Snyder</u>, the Seventh Circuit examined Illinois' waiver jurisprudence and deemed it to be adequate for procedural default purposes.  <u>Schaff</u>, 190 F.3d 513, 524-25 (7th Cir. 1999). The waiver principles examined in <u>Schaff</u> were identical to the ones that the Illinois Appellate Court applied to Sams' claim; thus, this Court adopts the reasoning in <u>Schaff</u> regarding consistency.  Additionally, as set forth below, the Appellate Court applied Illinois waiver jurisprudence to Sams' case in a principled manner.

It is clear from the record that Sams did not argue ineffective assistance of counsel, based on trial counsel's failure to preserve the record to reflect that Sams remained shackled, either on direct appeal or in his 2004 PLA. Although Sams raised other ineffective assistance of counsel claims, the failure to alert the state court to a complaint about a specific aspect of counsel's assistance results in procedural default relating to that aspect of representation.  <u>See</u> <u>Stevens v. McBride</u>, 489 F.3d 883, 894 (7th Cir. 2007). Sams did not assert that the failure to raise Claim 2 on direct appeal

stemmed from ineffective assistance of appellate counsel.[5]   Additionally, Sams presented evidence that he realized his shackles were visible to the jury while he was standing up during the newspaper lady's testimony.  Finally, as the Appellate Court noted, any failure to preserve the record regarding the visibility of the shackles was evident from the face of the original appellate record.  Thus, the record reflects that the state court disposed of Claim 2 on the independent and adequate state law ground of forfeiture.  Claim 2 is, therefore, procedurally defaulted.

This Court can consider the procedurally defaulted claim only if Sams can establish either: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) a fundamental miscarriage of justice will occur if the claim is not considered.  Coleman, 501 U.S. at 750.

---

[5]The Court recognizes that the Supreme Court has held that a defendant in a federal criminal prosecution need not raise a claim of ineffective-assistance on direct appeal in order to preserve it for a collateral proceeding under 28 U.S.C. § 2255. Massaro v. United States, 538 U.S. 500 (2003).  The Seventh Circuit has characterized the rule in Massaro as "a rule of practice for federal judges in federal criminal cases" which "does not change the relation between state and federal courts."  Hayes v. Battaglia, 403 F.3d 935, 937 (7th Cir. 2005).  According to the Seventh Circuit, because Massaro was not a constitutional decision, "the holding of Massaro is not legally binding on states."  Gomez v. Jaimet, 350 F.3d 673, 678 (7th Cir. 2003).  With respect to Illinois law, the Seventh Circuit has expressly held that "[w]hile Illinois law on waiver may be in conflict with the federal court's own procedural default rule, it continues to operate as an adequate and independent state ground for barring federal habeas review of his ineffective assistance of counsel claim."  Id.

Sams has presented no evidence of cause or prejudice.  Furthermore, Sams cannot establish that a fundamental miscarriage of justice will occur if the claim is not considered.  The Seventh Circuit instructs that the fundamental miscarriage of justice exception applies only where the constitutional violation probably resulted in the conviction of a defendant who was "actually innocent."  <u>Gomez</u>, 350 F.3d at 679.  The exception is based on the premise that, when a petitioner who defaulted on a claim of constitutional error presents such significant evidence of actual innocence that a court cannot be confident in his conviction unless it also is satisfied that no harmful constitutional error marred the trial, "the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995).  "Actual innocence" means factual innocence, not mere legal insufficiency.  To establish actual innocence, Sams must show that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him.  <u>Id</u>. at 327-28.  Significantly, however, Sams may advance such a claim only by presenting "new reliable evidence" of his innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  <u>Id</u>. at 324.  Sams has offered no such evidence,

so his argument for actual innocence necessarily fails. The Court, therefore, cannot consider the merits of Claim 2.

Claim 1 remains for merit review. This Court may issue a writ of habeas corpus to a state official only if the state court decision denying Sams' claim was: (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). If the state court identified the correct rule of law, then this Court will deny the habeas petition unless the state court's application of the law was not minimally consistent with the facts and circumstances of the case. Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997).

Sams claims that his due process rights were violated when he was forced to wear shackles during his trial. The relevant state decision on this issue is that of the Illinois Appellate Court on direct appeal. Answer, Ex. E. The Appellate Court noted that the decision to shackle a defendant falls within the discretion of the trial court, but that when a defendant is ordered to remain shackled, the record should disclose the underlying reasons and show that the defense was given an opportunity to object. Id., p. 6-7. The

Court further recognized that shackling should generally be avoided and a defendant should only be shackled if evidence suggests he may try to escape, he may pose a threat to the safety of the people in the courtroom, or if shackling is necessary to maintain order during trial.  Id., p. 7.  This was consistent with clearly established Supreme Court precedent applicable at the time, which provided that during the guilt phase of a trial, a criminal defendant had a right to remain free of physical restraints that were visible to the jury, but this right could be overcome in a particular instance by essential state interests, including physical security, escape prevention, or courtroom decorum.  See Holbrook v. Flynn, 475 U.S. 560, 568-569 (1986); Illinois v. Allen, 397 U.S. 337, 343-344 (1970).  The Court notes that Deck v. Missouri, cited by Petitioner, had not been decided at the time the Illinois court considered Sams' direct appeal.   Deck, 544 U.S. 622 (2005).  However, the standard applied by the Appellate Court is consistent with Deck, which held that due process prohibits "the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial," which "may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of

18

escape at trial." Id. at 629.  Thus, the Illinois Appellate Court applied the correct legal standard to Sams' claim.

Moreover, the Illinois Appellate Court's application of law to the facts was reasonable.  The Illinois Appellate Court, considering the record as a whole, determined that the trial court did not abuse its discretion in ordering Sams to remain shackled given Sams' criminal history, courtroom security concerns, and the fact Sams was in custody.  The Court further determined that the jurors could not see Sams' shackles and precaution were taken to ensure that they would not see them.  "The standard for proving an unreasonable application of federal law, . . . is more demanding than for proving an erroneous application of that law."  Hubanks v. Frank, 392 F.3d 926, (7th Cir. 2004).  If the determination was "at least minimally consistent with the facts and circumstances of the case, [the Court] shall uphold the state court ruling, even if it is not well reasoned or fully reasoned, or even if it is one of several equally plausible outcomes."  Schaff, 190 F.3d at 523 (internal quotations and citations omitted).  The Appellate Court determinations are at least minimally consistent with the facts and circumstances of the instant case.  Among other convictions, Sams had a prior conviction for jail escape, of which the trial judge had previously been

made aware.   The record indicates that there had been a history of difficulties in the courtroom in Livingston County.  The record on appeal contained no evidence that the jurors were aware of the shackles.[6]  In fact, the record contained an uncontroverted statement by the trial judge that the jurors could not see Sams' feet.  For these same reasons, the Appellate Court decision cannot be deemed an unreasonable determination of the facts in light of the evidence presented in the record on appeal.  Thus, Sams is not entitled to habeas relief on Claim 1.  Therefore, the Petition must be denied.

## CONCLUSION

THEREFORE, as set forth above, Lisa Madigan is substituted as Respondent for Gregory Firkus.  Petitioner Derrick S. Sams' Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 4) is DENIED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

---

[6]The Court notes that, even considering the current record as a whole, there is no direct evidence that any juror was aware that Sams was shackled during the trial.  Sams claims that, as an inmate, he was forbidden to contact the jurors, but he does not provide any reason that would have prevented his state appointed counsel from collecting such evidence.

ENTER:   November 6, 2009

FOR THE COURT:

_____ s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE